# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2003

(Argued: May 12, 2004

Decided: December 3, 2004
Errata Filed: January 6, 2005)

Docket No. 03-1457

UNITED STATES OF AMERICA,

*Appellee*,

v.

JORGE L. PABON-CRUZ,

*Defendant-Appellant.*

BEFORE: MESKILL, LEVAL, AND CABRANES, *Circuit Judges*

Jorge L. Pabon-Cruz appeals from a judgment of conviction entered on August 11, 2003, in the United States District Court for the Southern District of New York (Gerard E. Lynch, *Judge*), adjudging him guilty of, *inter alia*, advertising to distribute or receive child pornography in violation of 18 U.S.C. § 2251(c)(1)(A) and sentencing him principally to 120 months' imprisonment. On appeal, Pabon-Cruz challenges (1) our Court's decision, by writ of mandamus, to prevent the District Court from informing the jury of the ten-year mandatory minimum sentence attached to the advertising offense; (2) the District Court's instructions to the jury regarding the elements of the advertising offense; and (3) the constitutionality, under the Eighth Amendment's prohibition of cruel and unusual punishment, of that mandatory minimum sentence.

The finding of guilt is affirmed, the sentence is vacated, and the cause is remanded for resentencing.

COLLEEN P. CASSIDY, The Legal Aid Society, Federal Defender

1

Division, Appeals Bureau, New York, NY, *for Defendant-Appellant.*

ALEXANDER H. SOUTHWELL, Assistant United States Attorney (Celeste L. Koeleveld, Assistant United States Attorney, *of counsel*; David N. Kelley, United States Attorney, *on the brief*), United States Attorney's Office for the Southern District of New York, New York, NY, *for Appellee.*

JOSÉ A. CABRANES, *Circuit Judge*:

This case, before our Court for the second time, involves an eighteen-year-old man who has been sentenced to ten years in prison following conviction on a charge of advertising to distribute or receive images of child pornography, and a charge of receiving or distributing child pornography. Previously, in the midst of trial, the Government filed a petition for a writ of mandamus asking us to prohibit the United States District Court for the Southern District of New York (Gerard E. Lynch, *Judge*) from informing the jury about the mandatory ten-year sentence that would be imposed on defendant if he were convicted of the advertising offense; the statute prohibiting distribution required no such minimum sentence. Two days later, after staying proceedings in the District Court, a panel of this Court issued the writ of mandamus requested by the Government in a brief summary order. After the writ was issued, and the District Court delivered its instructions, the jury convicted defendant of the advertising offense and of distributing child pornography by computer.

On appeal from the final judgment of conviction, defendant challenges (1) our Court's prior decision to prevent the District Court from informing the jury of the mandatory minimum sentence attached to the advertising count; (2) the District Court's instructions to the jury regarding the elements of the advertising offense; and (3) the constitutionality under the Eighth Amendment of the statute requiring the imposition of a mandatory minimum sentence.[1] Though the issue was not

---

[1] The Eighth Amendment to the Constitution provides in relevant part that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII.

2

raised by counsel, nor addressed by the District Court, we consider *nostra sponte* whether the statutory penalty provision of 18 U.S.C. § 2251(d) mandates a minimum ten-year term of imprisonment. For the reasons stated below, we affirm the finding of guilt, but vacate the sentence and remand for resentencing.

## BACKGROUND

Jorge L. Pabon-Cruz, who had just turned 18 at the time of the conduct at issue, was charged with and convicted of both advertising and distributing child pornography over the Internet. Pabon-Cruz is a first-time offender. He had been living with his mentally disabled mother and studying computer science as a scholarship student at the University of Puerto Rico, and the District Court found that he had not been involved in the creation of any child pornography. Count One of the indictment charged Pabon-Cruz with violating 18 U.S.C. § 2251(c)(1)(A), which applies to any person who "knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering . . . to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct." 18 U.S.C. § 2251(c)(1)(A) (2000).[2] At the time of Pabon-Cruz's conduct, that advertising

---

[2] At the time of Pabon-Cruz's conduct, 18 U.S.C. § 2251(c) provided in full:

(1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering—

(A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or
(B) participation in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct; shall be punished as provided under subsection (d).

(2) The circumstance referred to in paragraph (1) is that—

offense was understood to carry a ten-year mandatory minimum prison sentence. *Id.* § 2251(d).[3]

Count Two of the indictment charged Pabon-Cruz with violating 18 U.S.C. § 2252A(a)(2)(B), which applies to any person who "knowingly receives or distributes . . . any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2)(B) (2000). That offense, unlike the advertising offense, carried no mandatory minimum sentence when Pabon-Cruz engaged in the conduct at issue.[4] *See id.* § 2252A(b).

Before trial, the Government moved to preclude any mention of the ten-year mandatory minimum sentence that applied to the advertising offense and asked the District Court to instruct the jurors that sentencing was not their concern.[5] Defense counsel, in turn, asked the Court to inform the jury that the advertising count was the more serious of the two counts charged in the indictment and that it carried a ten-year mandatory minimum. Defense counsel expressed concern

---

(A) such person knows or has reason to know that such notice or advertisement will be transported in interstate or foreign commerce by any means including by computer or mailed; or
(B) such notice or advertisement is transported in interstate or foreign commerce by any means including by computer or mailed.

18 U.S.C. § 2251(c) (2000). Under legislation passed two years after Pabon-Cruz's conduct, this language was moved to 18 U.S.C. § 2251(d), in which subsection (1) has been altered to state that violators "shall be punished as provided under subsection (e) [the penalty provision originally in subsection (d)]." Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 506, 117 Stat. 650, 683 (2003).

[3] At the time of Pabon-Cruz's conduct, 18 U.S.C. § 2251(d) provided, in relevant part, that "[a]ny individual who violates, or attempts or conspires to violate, this section shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, and both." 18 U.S.C. § 2251(d) (2000). The provision has been changed to read "[a]ny individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years," and 18 U.S.C. § 2251(d) has been reclassified as 18 U.S.C. § 2251(e). *See* PROTECT Act, § 103, 117 Stat. at 653.

[4] The PROTECT Act subsequently established a five-year mandatory minimum for receiving or distributing child pornography. *See* PROTECT Act § 103(b)(1)(E), 117 Stat. at 653 (codified at 18 U.S.C. § 2252A(b)(1)).

[5] In discussing the proceedings below we refer to the ten-year mandatory minimum sentence as the District Court and the parties understood it during those proceedings. Unless otherwise noted, all references in this section to 18 U.S.C. § 2251 or 2252A are to the versions in effect at the time of Pabon-Cruz's conduct in 2001.

4

that, in the absence of a clarifying instruction, the jury would (erroneously) consider distributing child pornography to be a more serious offense than advertising to distribute it.

The Government also asked for the District Court's permission to submit to the jury the images advertised and distributed by defendant. In response, defendant offered to stipulate that those images constituted child pornography and moved to preclude the Government from introducing the photographs at trial on the ground that they were inflammatory.

Judge Lynch ruled before trial that the Government could prepare for the jury a binder containing 15 pornographic images. Judge Lynch also said that he was inclined to inform the jury of the penalty that Pabon-Cruz would face if he were convicted on the advertising count. Judge Lynch explained that, in his view, the Government's request to introduce images of child pornography and defendant's request to instruct the jury about the mandatory minimum were related:

> I must say, I find both sides a little bit inconsistent in that respect. The defense seems to want the jury to make some kind of a judgment about whether the penalty is appropriate for the conduct without letting the jury see what the conduct consists of. On the other hand, the government, which had the opportunity to have a fact finder who would be bound to apply the law and the evidence, chose a fact finder, I assume, because it wanted a judgment of the community, and yet it doesn't want the community to know what it is actually judging about or what the consequences of its judgment are.

Accordingly, Judge Lynch indicated that because he had decided to grant the Government's request to introduce images of child pornography into evidence, he would also grant defendant's request to instruct the jury about the mandatory minimum.

In response to the Government's assertion that any decision to inform the jury about sentencing "goes directly against controlling Second Circuit authority" requiring courts to forestall nullification arguments to the jury, Judge Lynch insisted that he did not "intend to allow the defense to argue nullification." He elaborated:

> I have carefully considered the cases that you cite. I don't intend to allow the defense to argue nullification. I don't intend to allow the defense to argue that [the

5

jury] should acquit because the sentence is too high. I will instruct the jury, in the usual way, that if they find that the government has met its burden of proving all the elements of both or either offense beyond a reasonable doubt, then they must convict the defendant of those charges.

But I think there is a difference between saying that the court does not and cannot approve of nullification, and ignoring the fact that juries have historically played this role. I think they are only appropriately able to play that role when they do it against a backdrop of stern admonitions that they are not supposed to do it. I think it is an act of civil disobedience if they do it. And they should not be given any encouragement or any condonation or any instruction that suggests to them that it is legally permissible for them to violate their oath as jurors. On the other hand, historically jurors have sometimes done that, and the judgment of history is sometimes that when they do that, they are in effect lawless and evil, and at other times the judgment of history is that they've done the right thing.

Thus, although Judge Lynch proposed to admonish the jury that nullification is not permissible, he also proposed to tell the jury about the sentencing consequences of its verdict so that the jury could make an informed decision as to whether to nullify the law.

As a separate reason to inform the jury about the mandatory minimum, Judge Lynch offered the possibility of juror confusion about the relationship between the two counts in the indictment. According to Judge Lynch, it is counterintuitive that advertising to distribute pornographic images carries a more severe sentence than actually distributing such images, and, therefore, jurors might convict on the advertising count alone as part of a compromise verdict. Although he acknowledged that juries are instructed not to compromise between separate counts, he said that "[i]f there is any incentive or any situation arises in which the jury will be tempted to . . . compromise, it would be absolutely perverse to let them decide to compromise on what is in effect the more serious charge."

At the charge conference, Judge Lynch announced his final decision to inform the jury of the ten-year minimum sentence applicable to the advertising count. In doing so, he noted that although "civil disobedience is not encouraged and is indeed prohibited by the law, it is sometimes celebrated as an aspect of our system." He continued:

I would not expect the average juror to be very tempted to civil disobedience

6

> in light of the seriousness of the conduct shown here and the strength of the evidence against the defendant.
>
> But in the unlikely event that members of the jury were so troubled that they decided to acquit in the face of the court's instruction, in violation of their oaths, and on the face of the evidence in the case, that, it seems to me, would constitute a significant exercise of the historic function of the jury and one that the jurors could never imagine if they had no notion of the seriousness of this offense in terms of punishment.

Judge Lynch then reiterated that, just as the jurors should see the images of child pornography in order to understand the defendant's offenses, they should also understand the serious and, in his view, unexpected consequences of a conviction on the advertising count. Finally, the judge again offered the possibility of a compromise verdict as a separate, "less important," reason to inform the jury about sentencing.

Having decided to inform the jury of the mandatory minimum sentence attached to the advertising count, Judge Lynch proposed the following language for the charge:

> Count One charges the defendant with advertising for child pornography. In terms of punishment, it is the more serious of the two charges in the indictment. It carries a maximum of twenty years in prison, and a mandatory minimum sentence of ten years in prison.

In sum, Judge Lynch intended to tell the jury, over the Government's objection, about both (1) the mandatory minimum applicable to the advertising offense and (2) the relationship between the two separate counts in the indictment.

Before the jury instructions contemplated by the judge were delivered, the Government filed a motion for an emergency stay and a petition for a writ of mandamus with this Court. In its petition, the Government asked this Court to direct the District Court not to instruct the jury regarding the penalties faced by Pabon-Cruz if convicted of the advertising count. The next day, our Court entered an emergency stay of the trial and heard arguments on the petition for a writ of mandamus.

On the day following argument, the Court granted the Government's petition for a writ of

7

mandamus in a brief summary order. The order stated in full:

> IT IS HEREBY ORDERED that the petition for a writ of mandamus is granted. Challenges to a proposed jury charge may properly be considered on a petition for a writ of mandamus. *See United States v. Coonan*, 839 F.2d 886 (2d Cir. 1988); *United States v. Wexler*, 31 F.3d 117 (3d Cir. 1994). The District Judge's proposed jury instruction regarding the penalties the defendant faces if convicted is a clear abuse of discretion in light of binding authority. *See Shannon v. United States*, 512 U.S. 573 (1994); *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997). IT IS FURTHER ORDERED that the stay of trial proceedings is hereby lifted.

In the charge subsequently delivered to the jury, Judge Lynch did not mention either the mandatory minimum sentence then imposed by 18 U.S.C. § 2251(d) or that the advertising offense carried a more severe sentence than the distribution offense.[6] Instead, he simply instructed the jury that "[t]he question of possible punishment of the defendant is of no concern to [you]" and that "[t]he duty of imposing sentence rests exclusively upon the Court."

Judge Lynch went on to explain the elements of the advertising offense as follows:

> First, that the defendant, Jorge Pabon-Cruz, knowingly made or published or caused to be published a notice or advertisement.

> Second, that the notice or advertisement sought or offered to receive, exchange, buy, produce, display, distribute, or reproduce any visual depiction, if the production of such visual depiction involved using a minor engaged in sexually explicit conduct. . . .

> In other words, the images sought or offered had to show a minor engaging in sexually explicit conduct, and had to be produced using a real minor engaged in sexually explicit conduct and not some digital or virtual creation that looks like a minor.

> Third, that his notice or advertisement went from one state or United States territory to another by any means, including by computer. Going from one state or United States territory to another is known as being transported in interstate commerce.

---

[6] Our Court's order, which prevented the "proposed jury instruction regarding the penalties the defendant faces if convicted," did not distinguish between (1) the proposed instruction regarding the mandatory minimum, and (2) the proposed instruction that the advertising offense carried a harsher penalty than the distribution offense. Accordingly, the District Court removed both instructions from its charge.

8

With respect to the first and second elements of the advertising count, Judge Lynch told the jury that the terms "notice" and "advertisement" were "self-explanatory," and that the advertisement "has to seek or offer a visual depiction . . . show[ing] a minor engaging in sexually explicit conduct." With respect to the second element of the advertising count, Judge Lynch also said that the depictions offered had to involve the use of actual minors (*i.e.*, real persons under the age of 18), but he did not say whether the defendant had to *know* that the images depicted actual minors or that the advertisement sought or offered a depiction of a minor engaged in sexual conduct.[7]

During deliberations, the jury sent a note referring to the advertising count and requesting "some clarity on whether the ad or notice must specifically mention a visual depiction or will any ad or notice suffice." In response, Judge Lynch repeated part of the original charge and added:

> Not any kind of advertisement or notice will do. As I told you before, and as I just reread from the charge, the defendant had to knowingly make or publish a specific kind of notice or advertisement. In order to establish a violation of the statute, the government must prove beyond a reasonable doubt that the defendant made or published an advertisement or notice that sought to exchange, receive or distribute a visual depiction of the kind I defined for you. No particular magic words or phrases need to be included, but there must be proof beyond a reasonable doubt that the notice or advertisement concerned visual depictions of the kind I defined for you.

The jury convicted defendant on both counts of the indictment. After the verdict, Pabon-Cruz moved for a judgment of acquittal and, in the alternative, for a new trial. He argued, *inter alia*, that the evidence presented at trial was insufficient to prove that he knew that the photographs contained images of actual minors and that such knowledge was a required element of the advertising count. The District Court denied these post-trial motions. *See United States v. Pabon-Cruz,*

---

[7] By contrast, with respect to the distribution count, Judge Lynch instructed the jury that Pabon-Cruz had to know that the images he distributed depicted actual minors and "the general nature, character, and content of the child pornography."

255 F. Supp. 2d 200 (S.D.N.Y. 2003).

In advance of sentencing, defendant asked the District Court to declare the ten-year minimum penalty then mandated by 18 U.S.C. § 2251(d) unconstitutional in light of the Eighth Amendment's prohibition on cruel and unusual punishment. Judge Lynch began his response to this request by noting that "[t]his is without question the worst case of my judicial career." He went on to lament the inconsistencies in the sentencing scheme applicable to child pornography. Judge Lynch noted that, in contrast to advertising to distribute child pornography, "Congress has not imposed a mandatory sentence on distributing child pornography or on creating such pornography or even on sexually abusing children." And yet, according to Judge Lynch, "[no] member of Congress would defend the view that posting such an advertisement is a more serious offense than child rape." Judge Lynch also criticized the breadth of § 2251(d), concluding that "it is a lack of wisdom of this particular statute that it does not take into account the facts of particular cases." In Judge Lynch's view, the statute's flaws are particularly apparent in the instant case, which involves "essentially an adolescent" who had never physically harmed a child.

Nevertheless, Judge Lynch concluded that the mandatory minimum sentence, which has since been increased to fifteen years,[8] was a deliberate decision by Congress, and that the deference owed to Congress' policy judgments was such that he could not hold that the ten-year mandatory minimum sentence violated the Eighth Amendment.[9] Thus, consistent with the mandatory minimum then codified in § 2251, Judge Lynch sentenced Pabon-Cruz principally to ten years in prison.

---

[8] *See* note 3 *ante.*

[9] Among other things, Judge Lynch found that the disparity between the mandatory minimum sentence imposed on Pabon-Cruz for the advertising count and the lack of a mandatory minimum sentence for the more serious crimes of creation of child pornography or of sexual abuse of children was "not irrational," because there is less need for mandatory minimum sentences for violent crimes that judges are inclined to punish harshly.

DISCUSSION

On appeal, Pabon-Cruz challenges his conviction on the advertising count and the sentence that resulted from that conviction on three separate grounds. First, Pabon-Cruz contends that our Court wrongly interfered with Judge Lynch's proposed jury charge and thus prevented Judge Lynch from giving a proper and balanced charge. Second, Pabon-Cruz argues that the District Court's jury charge on the advertising count was flawed because it failed (1) to require the jury to find the specific content of defendant's advertisement which was required for conviction—*i.e.*, that it specifically sought or offered visual depictions of actual minors, and (2) to explain that defendant had to know that the images for which he advertised depicted actual minors. Finally, Pabon-Cruz asserts that, in the circumstances presented in this case, imposition of a mandatory minimum sentence of ten years' imprisonment violates the Eighth Amendment's proscription of cruel and unusual punishment. In addition to the arguments raised by Pabon-Cruz, we *nostra sponte* raised a question regarding the text of the statutory penalty provision of 18 U.S.C. § 2251(d). In particular, we directed counsel to submit supplemental briefing regarding the precise terms of the mandated penalty.

### A. The Writ of Mandamus

Although defendant frames his challenge as one to the prior panel's mandamus ruling, the pertinent question on appeal is not whether that ruling was correct, but whether defendant was denied the benefit of a charge he requested to which he was legally entitled. Accordingly, even if we believed the earlier panel was incorrect in forbidding the District Court from instructing the jury on the sentencing consequences, the conviction remains sound unless the instructions actually given by the District Court were in error or the defendant had a legal entitlement to the instruction he was

11

denied. *See United States v. Vasquez*, 82 F.3d 574, 577-78 (2d Cir. 1996) (affirming a conviction where the omitted jury instructions, although legally correct and even "preferable," were not necessary).[10]

The Supreme Court's ruling in *Shannon v. United States*, 512 U.S. 573 (1994), makes clear that defendant had no legal right to a charge informing the jury of the sentencing consequences of its decisions. In *Shannon*, the Supreme Court rejected a defendant's argument that the jury had to be informed that a defendant acquitted by reason of insanity could be committed to a mental institution. *Id.* at 575. En route to reaching that decision, the Court made the following observation in fully persuasive *dicta*:

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

*Id.* at 579.

The *Shannon* Court left open the possibility that it might be "necessary under certain limited circumstances" to instruct a jury regarding the sentencing consequences of its verdict. *Id.* at 587. The circumstance the Court identified as possibly calling for such an instruction was one in which the jury has been affirmatively misled by counsel or a witness:

> [W]e recognize that an instruction of some form may be necessary under certain limited circumstances. If, for example, a witness or prosecutor states in the presence

---

[10] Pabon-Cruz points out that, after the verdict was announced, two jurors told defense counsel that they had "made a mistake." These jurors were brought before Judge Lynch, and they told Judge Lynch that their confusion over the supplemental instruction had led them to convict on the advertising count even though, in their view, it was not supported by the evidence. Even if this evidence is not barred by Federal Rule of Evidence 606(b), which generally forbids juror testimony "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict," it is irrelevant, because it does not bear on defendant's entitlement to the proposed jury charge. Instead, it merely suggests that the disallowed charge might have benefitted defendant had it been delivered to the jury.

of the jury that a particular defendant would "go free" if found NGI [not guilty by reason of insanity], it may be necessary for the district court to intervene with an instruction to counter such a misstatement. The appropriate response, of course, will vary as is necessary to remedy the specific misstatement or error. We note this possibility merely so that our decision will not be misunderstood as an absolute prohibition on instructing the jury with regard to the consequences of an NGI verdict.

*Id.* at 587-88. Nothing in *Shannon* suggests Pabon-Cruz had any right to receive an instruction on the sentencing consequences of a verdict of conviction in the circumstances with which the District Court was presented.

In *United States v. Thomas*, our Court explained that trial judges are duty bound to dismiss jurors who manifest an intent to nullify the law. *See Thomas*, 116 F.3d 606, 615-18 (2d Cir. 1997). Although we ultimately vacated a district court's decision to dismiss a juror because record evidence showed that the juror's view on the merits of the case might not have been motivated by an intent to nullify, *id.* at 625, we emphasized first that "the power of juries to 'nullify' or exercise a power of lenity is just that—a power; it is by no means a right or something that a judge should encourage or permit if it is within his authority to prevent." *Id.* at 615. We explained further that "[i]nasmuch as no juror has a right to engage in nullification—and, on the contrary, it is a violation of a juror's sworn duty to follow the law as instructed by the court—trial courts have the duty to forestall or prevent such conduct . . . ." *Id.* at 616.

Nothing in *Thomas*, or in any other authority of which we are aware, in any way supports the proposition that Pabon-Cruz had an entitlement to have the jury instructed as to the sentence he would receive if convicted.[11] Accordingly, we conclude that his rights were in no way abridged by the delivery of a jury charge which omitted this information. We decline to overturn the conviction on this ground.

---

[11] Because the issue is not before us, we intimate no view as to whether, or in what circumstances, a trial judge may inform the jury of the relationship between punishment and offense.

13

## B.  The Jury Charge

Pabon-Cruz next claims that the District Court's charge to the jury on the advertising count was flawed because the District Court (1) failed to require the jury to find, with regard to the content of Pabon-Cruz's advertisements, that it specifically sought or offered visual depictions of actual minors; and (2) failed to require the jury to find that Pabon-Cruz *knew* that his advertisement sought or offered visual depictions of actual minors.

Because Pabon-Cruz did not raise these arguments before the District Court delivered its jury charge,[12] we review for plain error. *See, e.g.*, *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004). Plain error requires "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). Where these conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 732 (internal quotation marks omitted)).

Pabon-Cruz cannot demonstrate plain error here. As an initial matter, Pabon-Cruz has raised no serious objection to the District Court's charge regarding the content of the advertisements. A review of the District Court's instructions shows that the Court repeatedly told the jury that, in order to find defendant guilty, defendant had to make or publish a specific kind of advertisement—namely,

---

[12] Pabon-Cruz's appellate counsel conceded at oral argument before this Court, and the record confirms, that defendant's trial counsel did not object to Judge Lynch's failure to instruct the jury that the defendant must know that the advertised materials depict actual minors. By contrast, appellate counsel argues that trial counsel's response to the jury's request for clarification "on whether the ad or notice must specifically mention a visual depiction or will any ad or notice suffice" constituted "somewhat of an objection" with respect to the proposed jury charge on the content of the advertisement. In response to the jury's request, trial counsel asked Judge Lynch to state clearly that "any ad or notice" will not suffice for the purposes of the statute.

This response by trial counsel to the jury's inquiry cannot properly be viewed as an objection to the jury charge, because, after hearing defense counsel's views, Judge Lynch *agreed* with defense counsel that he should tell the jury that "not any kind of advertisement will do." Moreover, once Judge Lynch expressed his agreement with defense counsel, she acceded to the proposed charge without further comment.

an advertisement for visual depictions of an actual minor engaging in sexual activity. These instructions tracked the language of 18 U.S.C. § 2251(c)(1)(A), under which a person commits a crime if he "makes, prints, or publishes . . . any notice or advertisement seeking or offering . . . to receive, exchange, buy, produce, display, distribute, or reproduce any visual depiction . . . [the production of which] involves the use of a minor engaging in sexually explicit conduct and [which depicts] such conduct." In light of Judge Lynch's strict adherence to the text of the statute in framing his jury instruction, we reject as baseless Pabon-Cruz's assertion that the jury charge on the content of the advertisements was plainly erroneous.

Pabon-Cruz's second argument—namely, that the scienter element of a § 2251(c) offense requires proof of knowledge that the materials advertised depict actual minors—is stronger in theory but also falls short on the facts of this case. Any defect in the scienter charge on Count One for violating § 2251(c) was harmless in view of the charge given on Count Two for violating 18 U.S.C. § 2252A, the distribution charge. In describing the elements of the latter crime, Judge Lynch specified that "the government must prove beyond a reasonable doubt . . . that the defendant knew that the child pornography depicted at least one minor, that is, an actual person under the age of 18, and knew the general nature, character, and content of the child pornography." Because the materials involved in Count Two were the same as those involved in Count One, the jury's guilty verdict on Count Two necessarily showed that the jury found beyond a reasonable doubt defendant's knowledge of both the sexual nature of the visual depictions, and the actuality and minority of the children depicted. Any error in the District Court's charge was thus harmless.[13]

---

[13] We note that the District Court's instructions to the jury on the statute's scienter requirements were ambiguous. They left unclear not only whether defendant needed to know that the visual depictions sought or offered involved actual minors, but even whether defendant needed to know that the visual depictions were of sexual activity. In view of our reliance on the harmlessness of any error, we need not determine the extent of knowledge that § 2251(c) actually requires. *Cf. United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69, 78 (1994).

15

**C. The Statutory Penalty Provision of 18 U.S.C. § 2251(d).**

In the course of preparing this opinion, we discovered that the version of 18 U.S.C. § 2251(d), the penalty provision governing the advertising charge, set forth in the printed copy of the Conference Report at the time of voting by both houses of Congress provided that "[a]ny individual who violates . . . this section, shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, *or both*. . . ." 142 Cong. Rec. H11,652 (Sept. 28, 1996); 142 Cong. Rec. S11,842 (Sept. 30, 1996) (emphasis added). This language differs from that included in the bill signed by the President and printed in the Statutes at Large, which provides that "[a]ny individual who violates . . . this section, shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, *and both* . . . ." Pub. L. No. 104-208, § 121(4), 110 Stat. 3009-30 (1996) (emphasis added). Because much of this case turns on the penalty provision, and the language and interpretation of this provision was addressed neither by the parties nor by the District Court, we requested *nostra sponte* supplemental briefing on the question of how the provision should be construed, and whether it allows a violator to be sentenced to a fine in lieu of imprisonment. We have considered that supplemental briefing and now turn to a consideration of the language of the penalty provision.

The parties agree that the text of the bill signed by the President does not match the text of the Conference Report. Defendant argues that the "and both" language makes no sense; that the appropriate reading of the statute is thus "or both"; and that the District Court consequently has the discretion to sentence anyone convicted under the statute to a fine, a term of imprisonment of at least ten years, or both. The Government contends that the "and both" language controls and that, despite its ungrammatical phrasing, it should be read to require a minimum ten-year term of imprisonment.

It is clear that we have the authority to resolve this question despite its not having been raised in the District Court proceedings or in the parties' initial briefs. In an analogous situation, the Supreme

Court held that a Court of Appeals "decision to consider the issue [which had not been raised below] was certainly no abuse of discretion," *United States Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 448 (1993), and noted that "'when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'" *Id.* at 446 (quoting *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99 (1991)). Accordingly, before evaluating the constitutionality of the sentence imposed by the District Court, we must determine exactly what the statutory penalty provision in effect at the time of sentencing provided. We note that a subsequent Congress revised this statute, and opted unmistakably for a mandatory prison sentence, by providing in the PROTECT Act in 2003 that "[a]ny individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years . . . ." 18 U.S.C. § 2251(e); H.R. Conf. Rep. 108-66, at 4 (2003).[14] Thus any decision we make with respect to the penalty provision will apply to an extremely small universe of cases.

We begin with the observation that the "and both" language in the Statutes at Large makes no sense. As a grammatical matter, one cannot choose between "A, or B, and both." Rather, it seems obvious that Congress intended the provision to mean either "A, *or* B, *or* both," or "A *and* B." Both parties are in agreement on this point. The Government acknowledges that the "and both" language is "simply illogical" and "essentially [a] scrivener's error[]." We thus join the Fourth Circuit, the only other Court of Appeals to have considered the question, in finding the statutory language ambiguous, and recognizing the need to consult the legislative history as an aid to its interpretation. *See United States v. Rast,* 293 F.3d 735, 737 (4th Cir. 2002); *cf. Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 498 (1999) (Stevens, J., concurring) ("The Illegal Immigration Reform and Immigrant

---

[14] *See* notes 2 and 3 *ante.*

Responsibility Act of 1996 . . . is a part of an omnibus enactment that occupies 750 pages in the Statutes at Large. Pub. L. 104-208, 110 Stat. 3009-546. It is not surprising that it contains a scrivener's error.").

Turning to the legislative history, we observe that one of the possible constructions of the statutory language—"A, or B, or both"—was prevalent in the drafting history of the text, while the other possible construction—"A and B"—was never part of the text. The penalty provision was originally part of the Child Pornography Prevention Act of 1996, which itself was inserted into H.R. 3610, an omnibus appropriations act for fiscal year 1997, at the House-Senate Conference on that bill. The Conference Report on H.R. 3610, which contained the presumptively final, non-amendable version of the language agreed to by the House of Representatives and the Senate, stated that violators "shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, or both . . . ." H.R. Conf. Rep. No. 104-863, at 32 (1996); *see also* Charles Tiefer, Congressional Practice and Procedure: A Reference, Research, and Legislative Guide 818 (1989) ("No matter how distasteful any particular provision is, or how desirable some amendment would be, generally there is no way to amend a conference report; it can only be accepted or rejected as a whole."); *id.* at 249 ("At [the enrollment] stage, technical corrections can still be made (and, on rare occasions, major amendments), but only by the House and Senate passing a concurrent resolution directing the Clerk to make the correction."). The Conference Report on H.R. 3610, containing the "or both" language, was also inserted into the Congressional Record. *See* 142 Cong. Rec. H11,644, 11,652 (Sept. 28, 1996). Confusingly, the Senate Judiciary Committee Report on the Child Pornography Prevention Act employs the "and both" language when it sets forth the terms of the bill, S. Rep. No. 104-358, at 4 (1996), and the "or both" language in its analysis of the bill's provisions. *Id.* at 23. Because only the analysis section of the Senate Report was inserted into the Congressional Record during the Senate debate on H.R. 3610, the Congressional Record report of that debate contains only the "or both"

language. *See* 142 Cong. Rec. S11,838, 11,842 (Sept. 30, 1996).[15]

Before turning to the appropriate resolution of the diverging texts, we first address the Government's argument that the "enrolled bill rule" prevents us from questioning the "and both" language. The term "enrollment" refers to the process by which a bill passed by both houses of Congress in an identical form is prepared for signature and presentation to the President. Tiefer, *supra*, at 248. As explained by Professor Tiefer, the leading authority on Congressional practice and procedure, when bills originate in the House of Representatives, like the Omnibus Appropriations Act at issue here, the process of creating the enrolled bill is performed by the Clerk of the House, who assembles the bill, any amendments, the conference report, and the notification of the final action by the House, and from these he "meticulously" prepares the final form of the enrolled bill. *Id.* at 249 n.139 (quoting *How Our Laws Are Made*, H. R. Doc. No. 97-120, at 44 (1981)). Though technical corrections can be made at this stage, such corrections require the House and Senate to pass a concurrent resolution directing the Clerk of the House to make the change. *Id.* at 249. Once the enrolled bill is prepared, and printed on parchment, it is delivered first to the Speaker of the House for his signature, and then to the Senate's President (either the Vice-President of the United States or the President Pro Tempore) for his. *Id.* at 250. It is then presented to the President to be signed or vetoed. *Id.*

The enrolled bill rule—a longstanding rule, invoked by many courts, including the Supreme Court and our own Court—provides that "'[i]f a legislative document is authenticated in regular form by the appropriate officials, the court[s] treat[] that document as properly adopted.'" *United States v.*

---

[15] In addition, it appears that in order to facilitate debate on and passage of the omnibus appropriations act at the end of the fiscal year, a separate bill was introduced containing much the same text as that which eventually passed Congress as H.R. 3610. This bill, H.R. 4278, was passed by both the House and the Senate in votes that occurred simultaneously with the votes on H.R. 3610, although H.R. 4278 was never signed by the President. *See* 142 Cong. Rec. H12,033 (Sept. 28, 1996), S11,936 (Sept. 30, 1996). H.R. 4278 employed only the "or both" language supported by the Conference Report.

*Sitka*, 845 F.2d 43, 46 (2d Cir. 1988) (quoting *United States v. Thomas*, 788 F.2d 1250, 1253 (7th Cir. 1986) (citing *Field v. Clark*, 143 U.S. 649, 672-73 (1892))). We do not suggest that the bill at issue here was not validly adopted. Nor do we question that the statute, as adopted, provides that violators "shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, and both." In response to our request for briefing, the Government sent a representative of the Department of Justice to a National Archives facility to inspect and copy the original enrolled bill and has submitted a copy of the bill for the consideration of opposing counsel and this Court. That bill does in fact contain the "and both" language. Our task here is not to doubt the accuracy or validity of that language, but merely to determine what Congress intended by it. And the enrolled bill doctrine "places no limits on the evidence a court may consider in determining the meaning of a bill that has passed Congress." *Nat'l Bank of Oregon,* 508 U.S. at 455 n.7. Accordingly, we are free to determine the meaning of the statutory penalty provision of 18 U.S.C. § 2251(d).

The Government's reliance on the enrolled bill rule underscores its confusion about our task here. There is no question that the text of the bill signed by the President provides that violators "shall be fined . . . or imprisoned not less than 10 years . . . , and both," and that this is the law we are considering. It is equally clear that the "and both" language makes no sense in this sentence. We are thus required to determine how the language of the statute should be interpreted and applied. The legislative history of § 2251(d) discussed above suggests that the "and both" language passed into law was, as the Government suggests, a scrivener's error. The same sources suggest that throughout much of the debate on the provision, the materials on which Congress could have been expected to rely for authoritative understandings of the bill's language specified that the bill provided that violators should be "fined under this title *or* imprisoned not less than 10 years nor more than 20 years, *or* both." By contrast, no version of the text of which we are aware ever provided that violators should be "be fined under this title *and* imprisoned not less than 10 years nor more than 20 years." In light of those

20

sources, and the fact that the "or both" language is both grammatically unambiguous and logical as a matter of English usage, the "or both" language seems to us the most appropriate construction of the provision.

The Government contends that we should instead construe § 2251(d) as if it provided that violators "shall be fined under this title *and* imprisoned not less than 10 years nor more than 20 years." In support of this argument, the Government does not point to anything in the legislative history suggesting that language to that effect was ever put before or considered by Congress. Rather, the Government contends that whatever language Congress intended to adopt, that language should be construed as mandating a minimum of ten years' imprisonment on the basis of (i) the overall structure of § 2251(d); (ii) various statements made by individual legislators in support of and in opposition to the provision; and (iii) the alleged absurdity of any contrary interpretation. We disagree.

First, the Government contends that the structure of the statute was devised to set forth a regime of mandatory minimums, based on a defendant's prior convictions. The clauses of Section 2251(d) following the clause in question here, which apply only to recidivists, specify longer mandatory minimums and, more importantly, specify that such defendants "shall be fined under this title *and* imprisoned . . ." Pub. L. No. 104-208, § 121(4) (emphasis added).[16] Contrary to the Government's arguments, however, we do not find the other clauses in the paragraph to be irrefutable proof of Congress' intent to ensure mandatory minimum sentences for all offenders without

---

[16] The complete passage reads:

(d) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, and both, but if such person has one prior conviction under this chapter or chapter 109A, or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned for not less than 15 years nor more than 30 years, but if such person has 2 or more prior convictions under this chapter or chapter 109A, or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 30 years nor more than life.

Pub. L. No. 104-208, § 121(4).

21

exception; the discrepancy could as easily suggest Congress' intent to allow a more lenient sentence for first-time offenders. *See Sosa v. Alvarez-Machain*, 124 S. Ct. 2739, 2754 n.9 (2004) (referring to "the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.'"(quoting 2A N. Singer, Statutes and Statutory Construction § 46:06 (6th ed. 2000))).

The Government next argues, based on the legislative history of the provision, that the "plain import" was to mandate a ten-year minimum sentence. Government Letter Brief of Sept. 10, 2004, at 8. As evidence of this theory, the Government presents statements made in the report of the Senate Judiciary Committee describing the penalty provision, noting that "[t]he purpose of Senator Grassley's amendment [the amendment which resulted in the provision at issue here] is to toughen Federal penalties for the sexual exploitation of children." S. Rep. No. 104-358, at 22 (1996). However, it is immediately after describing this purpose that the report notes that "an individual who violates section 2251 would be fined *or* imprisoned for not less than 10 years nor more than 20 years, or both." *Id.* at 23 (emphasis added). Furthermore, no matter how we read the first-time offender provision of § 2251(d), the Child Pornography Prevention Act indisputably "toughen[ed] Federal penalties for the sexual exploitation of children." The previous version of the statute provided a ten-year *maximum* for first-time offenders, and a fifteen-year maximum for recidivists. *See* 18 U.S.C. § 2251(d) (1994). H.R. 3610 increased the maximum penalty for first-time offenders by ten years, changed the fifteen-year maximum for recidivists to a fifteen-year minimum, and added a new 30 years-to-life category for third-time offenders.

The Government also points to the statements in the Senate Report of three Senators opposed to the mandatory minimum provisions as evidence of the Congressional intent to mandate minimum sentences for all offenders. *See id.* at 31 (statement of Sen. Biden); *id.* at 33 (statement of Sen. Kennedy); *id.* at 34 (statement of Sen. Simon). As we have noted before, however, "'it is well

established that speeches by opponents of legislation are entitled to relatively little weight in determining the meaning of the Act in question.'" *In re Air Crash off Long Island*, 209 F.3d 200, 206 (2d Cir. 2000) (quoting *Holtzman v. Schlesinger*, 414 U.S. 1304, 1313 n.13 (1973) (Marshall, J., in chambers)).[17] We do not find the statements of the Senators opposed to mandatory minimum provisions to constitute persuasive evidence against the clear meaning of the provision.

Next, the Government notes that Senator Grassley, the sponsor of the amendment including the penalty provisions, stated on the floor of the Senate: "In the Judiciary Committee, I offered an amendment which would create a three-strikes-and-you're-out penalty structure for the production of child pornography. First time offenders will receive a 10-year minimum sentence. . . . My amendment passed the committee after much debate." 142 Cong. Rec. S11,285 (1996). While we acknowledge that these remarks by Senator Grassley contribute meaningfully at least to the understanding of his views,[18] these remarks do not furnish sufficient evidence that Congress as a whole intended to mandate minimum terms of imprisonment and cannot suffice to overcome the more substantial indications that Congress intended to permit a choice. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history.").[19]

---

[17] In any event, the Government offers no basis for concluding that the comments in the Senate Report criticizing reliance on mandatory minimums were directed at the first-offender penalty provision at issue here. The Child Pornography Prevention Act added or toughened numerous "mandatory minimum" penalty provisions throughout 18 U.S.C. §§ 2251, 2252, and 2252A. The Senate bill also created new mandatory minimums in proposed Section 2252B, a section that was ultimately not included in H.R. 3610. *See* S. Rep. 104-358 at 5-6. One or more of the Senators might well have criticized the addition of new mandatory minimums without considering the first-offender provision of § 2251(d) to be one of them.

[18] We note, however, that Senator Grassley's remarks are not necessarily persuasive evidence that Congress intended a mandatory minimum sentence to apply to first-time *advertisers* for child pornography. Although he was discussing § 2251(d), which unambiguously applies to § 2251(c)'s advertising offense as well as the child pornography production offenses of § 2251(a) and (b), the Senator's remarks refer only to the stiff penalties applicable to *production*. Defendant argues that Senator Grassley's focus on production demonstrates that § 2251(d) was applied to advertising only because of legislative inadvertence, and should thus be found unconstitutional under the Eighth Amendment. We have not addressed that argument because we do not reach the constitutionality of § 2251(d).

[19] In any event, even if the statements by individual members of Congress that the Government has drawn from the legislative history were weighty enough to counterbalance the evidence that the grammatically clear "or both" language was the version of the statute intended by Congress, we would hesitate to adopt the Government's position that

23

Finally, the Government contends that the penalty provision in question should be understood as mandating at least ten years' imprisonment because any other result would be nonsensical. We disagree. Construing § 2251(d) to provide that violators "shall be fined under this title or imprisoned not less than 10 years nor more than 20 years, or both" results in a sentencing provision that is grammatically clear and coherent, reconciles the ambiguous statutory language with an unambiguous version of the text that was employed throughout the legislative history of the provision, and does not produce absurd results in practice.

The Government argues that it simply makes no sense to permit a fine-only sentence, but to mandate that if any imprisonment is imposed, it must be at least ten years. This argument ignores the fact that the statute, passed in 1996, would operate against the backdrop of the Sentencing Guidelines. Depending on the particular circumstances of the crime and the offender, the Guidelines will almost always call for a sentence of at least several years' imprisonment for the offenses covered by § 2251(d), in which case § 2251(d) will mandate that the sentence be at least ten years. Only if there exist reasonable grounds for a very substantial downward departure will a federal judge have authority to consider imposing only a fine on an offense punishable under § 2251(d). In other words, the Government contends that it is patently absurd to read the statute, in line with significant textual support in the legislative history, to permit a court to sentence an offender to no prison time if his case is extraordinary enough to justify a substantial downward departure. In place of such a construction the Government suggests we read the provision, without any textual support, and largely on the basis of isolated comments by individual members of Congress, to mandate that all offenders be sentenced to ten years' imprisonment no matter what the facts may be in the individual case. We cannot agree that

---

an ambiguous penalty provision should be construed on that basis against a criminal defendant. *See United States v. R.L.C.*, 503 U.S. 291, 305 (1992) ("We do not think any ambiguity survives. If any did, however, we would choose the construction yielding the shorter sentence by resting on the venerable rule of lenity rooted in the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.") (internal quotation marks and citations omitted); *id.* at 307 (Scalia, J., concurring) ("[I]t is not consistent with the rule of lenity to construe a textually ambiguous penal statute against a criminal defendant on the basis of legislative history.").

24

there is any absurdity in prescribing a mandatory sentence for violations regarded as serious enough to warrant imprisonment while allowing a sentence without confinement where sufficient mitigating circumstances are found to justify withholding imprisonment altogether. Without doubt Congress could rationally have prescribed mandatory imprisonment for all violations. We recognize that Congress has indeed since amended the Act to provide unambiguously for such a result. But we cannot accept that it would have been absurd for Congress to *avoid* such a result.

The Fourth Circuit confronted the question of the appropriate interpretation of 18 U.S.C. § 2251 in *United States v. Rast*, 293 F.3d 735 (4th Cir. 2002). Relying on a previous Fourth Circuit case, *United States v. Jones*, 902 F.2d 1152 (4th Cir. 1990), the Court there accepted the plain language of the statute and concluded "that the opposition of a few Senators to § 2251(d)'s 'mandatory minimum provision' does little to clarify the meaning of the statute and cannot supply the sort of clearly expressed legislative intention necessary to displace the statute's plain meaning. Section 2251(d) means just what Congress intended it to say: a district court may impose either a fine *or* imprisonment of not less than ten nor more than twenty years, or both." *Rast*, 293 F.3d at 739.[20]

We agree with the reasoning of the Fourth Circuit in *Rast*. The plain language of the "or both" version which was in Congress' contemplation is clear and produces a viable, though somewhat odd, result. But nothing in the legislative history provides a strong enough basis to disregard the plain language of the Conference Report. *Cf. Conroy v. Aniskoff*, 507 U.S. 511, 516 (1993) ("[B]oth the history of this carefully reticulated statute, and our history of interpreting it, refute any argument that a literal construction of § 525 [of the Soldiers' and Sailors' Civil Relief Act of 1940] is so absurd or illogical that Congress could not have intended it."). Indeed, the Government's suggestion that construing the

---

[20] In *Rast*, the Fourth Circuit concluded that the operation of the Sentencing Guidelines "foreclose[d] the option of imposing solely a fine in [that] case," and that insofar as a term of imprisonment was there required—and § 2251(d) unquestionably requires that if a term of imprisonment is applied, it be not less than ten years—the District Court lacked the discretion to sentence the defendant under the statute to a term of imprisonment of less that ten years. 293 F.3d at 739-40. We intimate no view as to what the Sentencing Guidelines mandate in the present case.

statute based on the plain "or both" language is "nonsensical" and "obviously directly contrary to Congress' intent," Government Letter Brief of Sept. 10, 2004, at 16, is belied by the facts of this case, which suggest that a mandatory ten-year sentence is anything but the "obvious" result. Insofar as we see no ambiguity in the "or both" language, the Government's suggestion that the legislative intent was to mandate a minimum ten-year sentence is not sufficient to allow us to disregard the overwhelming textual support in the legislative history for the "or both" language. *See, e.g., Brown v. Gardner*, 513 U.S. 115, 120 (1994) ("In sum, the text and reasonable inferences from it give a clear answer against the Government, and that, as we have said, is 'the end of the matter.'" (quoting *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993)). Accordingly, we conclude that the version of § 2251(d) applicable to Pabon-Cruz's conviction on the advertising count permitted the District Court to impose a fine in lieu of imprisonment.

There is no doubt that allowing the District Court to choose between a fine and a ten-year term of imprisonment is unusual, but we conclude that the Government's approach is considerably more eccentric. The Government nonetheless contends that our decisions in *United States v. James*, 239 F.3d 120 (2d Cir. 2000) and *United States v. Detrich*, 940 F.2d 37 (2d Cir. 1991) dictate our decision in this case. We disagree. In *James*, we construed 18 U.S.C. § 1959(a)(1), which provided that individuals convicted of murder in aid of racketeering "shall be punished . . . by death or life imprisonment, or a fine under this title, or both." *James*, 239 F.3d at 126. We there noted that the plain language of the statute was "deeply problematic," and concluded: "[t]he notion that the statute contemplates the imposition of a fine without imprisonment cannot be reconciled with the extremely harsh punishments—death or life imprisonment—otherwise available." *Id.* The Court therefore rejected any approach that would lead to a judge being "free to reject a death sentence or life imprisonment for a defendant convicted under 18 U.S.C. § 1959(a)(1), but only by sentencing that defendant to a fine without prison time." *Id.* at 127.

26

*Detrich* involved 21 U.S.C. § 960(b)(2), a statute which provided that a person convicted of importing more than one hundred grams of heroin into the United States "shall be sentenced to a term of imprisonment of not less than 5 years . . . , a fine . . . , or both." 940 F.2d at 39. The Court rejected the argument that the District Court had a choice between imprisonment and a fine, concluding that "[a]lthough this portion of the statute could have been more artfully drafted, the structure of Section 960(b)(2) makes it readily apparent that the district court must impose a prison sentence of five years," based in large part on the provision's statement "that a person convicted under it 'shall be sentenced' to not less than five years." *Id.*

Both of these cases are readily distinguishable. *James* presents a situation where the plain language of the statute is indeed nonsensical enough to indicate that that plain meaning could not have been what Congress intended. To allow no option between capital punishment or life imprisonment, on the one hand, and a fine, on the other, is incomprehensible. We assume, in the instant case as in others, that Congress did not intend an absurdity. *Cf. Pub. Citizen v. Dept. of Justice*, 491 U.S. 440, 470 (1989) (Kennedy, J., concurring) (describing absurdity rule as "demonstrat[ing] a respect for the coequal Legislative Branch, which we assume would not act in an absurd way"). The ten-year mandatory sentence at issue here presents a considerably less stark choice for the District Court, as suggested by the facts of this case. Accordingly, we conclude that the holding in *James* does not govern this case.

Nor does the holding in *Detrich*, which relied in large part on the evidence of Congress' intention as revealed by the language of the statute at issue there. As noted, that statute provided that a person convicted of the relevant crime *"shall be sentenced to a term of imprisonment of not less than five years . . . ,"* 21 U.S.C. § 960(b)(2) (emphasis added), thus clearly demonstrating an intent that violators be imprisoned. *See* 21 U.S.C. § 960(b)(2) (providing that "any sentence imposed under this paragraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years

27

in addition to *such term of imprisonment*," and that "[n]o person sentenced under this paragraph shall be eligible for parole during *the term of imprisonment imposed therein*") (emphasis added)*; see also United States v. Colon-Ortiz*, 866 F.2d 6, 9-10 (1st Cir. 1989) (construing 21 U.S.C. § 841(b)(1)(B), a statute in relevant part identical to 21 U.S.C. § 960(b)(2), and noting that the language of the penalty provision makes clear that some imprisonment is mandated). Conversely, the language in the instant case provides that "any individual who violates . . . this section, *shall be fined under this title or imprisoned not less than 10 years . . . , and both . . .* ," thus leaving an open question as to whether imprisonment is mandatory. 18 U.S.C. § 2251(d) (emphasis added). In view of the differing statutory language, we conclude that *Detrich* also cannot control the instant case.

Accordingly, we hold that the "and both" language contained in the enrolled version of the statute makes no sense as a matter of grammar, usage, or law; that the "or both" language in the Conference Report does make some sense; that the stronger evidence of Congress' intent points to an understanding that the "or both" text is what Congress contemplated; that there is no textual support for the government's interpretation; and that no judicial precedent compels our holding otherwise. We therefore conclude that the District Court had the discretion to sentence defendant to either a fine or a term of imprisonment of not less than ten years or both. Because this was not clear to the parties or to the District Court at the time of sentencing, we are required to vacate the sentence and remand the cause to the District Court for resentencing consistent with our opinion here and with such Sentencing Guidelines as may be applicable in the circumstances presented.

### D. The Eighth Amendment

Pabon-Cruz argues that his sentence is so disproportionate to his conduct that it violates the Eighth Amendment's prohibition on cruel and unusual punishment. In light of our holding that the statute gives the District Court the discretion to sentence defendant to either a fine or a term of

imprisonment of not less than ten years or both and our vacatur of the sentence, this argument is moot.

**CONCLUSION**

For the reasons stated above, we hold that defendant had no entitlement to a charge instructing the jury on the sentencing consequences of a guilty verdict. Additionally, we hold that the District Court's jury charge on the advertising count, which did not include an instruction that 18 U.S.C. § 2251(c) requires proof of knowledge that the materials depict

29

actual minors, was not plainly erroneous. However, we conclude that the language of the statutory penalty provision gives the District Court discretion to sentence defendant to either a fine or a term of imprisonment of not less than ten years or both, and consequently remand for resentencing.

Accordingly, the finding of guilt is affirmed, the sentence is vacated, and the cause is remanded for further proceedings consistent with this opinion.