**UNITED STATES of America, Appellant,**

**v.**

**Boris SELIOUTSKY, Defendant–Appellee.**

**Docket No. 04–2740.**

United States Court of Appeals, Second Circuit.

Argued: March 17, 2005.

Decided: May 27, 2005.

Michael Ramos, Asst. U.S. Atty., Brooklyn, N.Y. (Roslynn R. Mauskopf, U.S. Atty., Susan Corkery, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for Appellant.

Peter J. Guadagnino, Brooklyn, N.Y., for Defendant–Appellee.

Before: NEWMAN, WESLEY, and HALL, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This sentencing appeal by the Government concerns the standard of review of advisory Sentencing Guideline determinations in the aftermath of *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and the need for sufficient findings to support such determinations. The United States appeals from the April 16, 2004, judgment of the District Court for the Eastern District of New York (John Gleeson, District Judge) sentencing Defendant–Appellee Boris Selioutsky to imprisonment for 30 months after his plea of guilty to possession of child pornography. The sentence, imposed prior to *Booker*, resulted from a downward departure for extraordinary family circumstances. We conclude that the District Court's findings thus far made are insufficient to support the departure, and we therefore remand.

Background

Pursuant to a plea agreement, Selioutsky pled guilty to Count One of a seven-count indictment charging child pornography offenses. Count One charged that the Defendant "did knowingly and intentionally possess materials containing images of child pornography," specifically, an identified computer file that he had downloaded from the Internet, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2). The plea agreement predicted an offense level of 25, calculated by starting with a base offense level of 17, U.S.S.G. § 2G2.2(a); adding 2 levels because the material involved a minor under the age of 12, *id.* § 2G2.2(b)(1), 5 levels for distribution, *id.* § 2G2.2(b)(2)(B), and 4 levels because the material portrayed sadistic, masochistic, or violent conduct, *id.* § 2G2.2(b)(3); and subtracting 3 levels for acceptance of responsibility, *id.* § 3E1.1(b). The adjusted level of 25, in Criminal History Category I, yielded a sentencing range of 57–71 months. The Defendant waived his right to appeal any sentence in excess of 60 months.

At sentencing, the parties agreed that the adjusted offense level was 27, because, in addition to the anticipated enhancements listed in the plea agreement, the presentence report added two levels for use of a computer to transmit pornographic material, *see* U.S.S.G. § 2G2.2(b)(5). Level 27 yielded a sentencing range of 70–87 months, although the parties and the

Court recognized that the statutory maximum sentence was 60 months.[1]

The Defendant sought a downward departure for extraordinary family circumstances.[2] *See* U.S.S.G. §§ 5K2.0, 5H1.6. In a written submission to the Court prior to sentencing, the Defendant had relied on the financial and emotional needs of his wife and two young children, who had moved to Georgia after his arrest. The PSR noted that the Defendant's wife, after a brief falling-out, was "paving the way" for him to rejoin her and the children in Georgia.

At sentencing, defense counsel added, in support of a family circumstances departure, that the Defendant currently lived in Brooklyn with his elderly parents and was providing some unspecified amount of financial support for them. Selioutsky informed the Court that his father was scheduled for an operation the following month. Defense counsel stated that Selioutsky has a married brother living in Pennsylvania. The brother is a doctor, but, according to defense counsel, "doesn't care for his parents."

The District Court elected to grant a downward departure for extraordinary family circumstances. The Court made clear that the rationale for the departure was that the aged parents "need [the Defendant] physically present." Judge Gleeson also stated that he was "not persuaded that the other son, once the defendant goes to jail, can't be relied upon for financial support."

## Discussion

### I. Applicable Sentencing Regime

The initial issue is to determine the applicable sentencing regime in the aftermath of the Supreme Court's decision in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Booker* ruled that a sentencing judge's compulsory use of the Sentencing Guidelines to enhance a sentence beyond the Guidelines range applicable to the facts found by a jury or admitted by a defendant violated the Sixth Amendment. *Id.* at 756. As a remedy, the Court excised subsections 3553(b)(1) and 3742(e) of Title 18. *Id.* at 756–57; *see United States v. Crosby*, 397 F.3d 103, 110 (2d Cir.2005). Subsection 3553(b)(1) made use of the applicable Guidelines range compulsory, subject to a limited "departure" authority. Subsection 3742(e) specified the standards of review for an appellate court in considering an appeal of a sentence imposed under the Guidelines.

The statutory sections identifying the substantive provisions and the maximum penalties for Selioutsky's offense, 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2), are contained in Chapter 110 of Title 18. Subsection 3553(b)(2) of Title 18 contains specific provisions governing use of the Guidelines and makes those provisions applicable to child crimes and sexual offenses, specifically including offenses under Chapter 110. *Booker* excised subsection 3553(b)(1) but made no mention of subsection 3553(b)(2). Thus, we confront the question whether the rationale of *Booker* requires us to consider subsection

---

1. The maximum penalty was subsequently raised to ten years, *see* Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act (PROTECT Act), Pub.L. No. 108–21, § 103(a)(1)(E)(i), 117 Stat. 650, 652 (2003). However, the amended penalty does not apply to the Defendant's offense, which took place prior to the effective date of the amendment. *See United States v. Pabon–Cruz*, 391 F.3d 86, 89 & n. 4 (2d Cir.2004).

2. Other grounds for a departure were advanced and rejected by the District Court, and are not at issue on this appeal.

3553(b)(2) excised, just as the Supreme Court excised subsection 3553(b)(1).[3]

Subsection 3553(b)(2) is identical to subsection 3553(b)(1) in its requirement that a sentencing judge impose a sentence within the range specified for the applicable Guideline, subject only to a limited departure authority.[4] The only difference between the subsections is that subsection 3553(b)(2) places more limits on the type of mitigating factors that can permit a departure than the limits specified in subsection 3553(b)(1).

■ We conclude that the *Booker* rationale requires us to consider subsection 3553(b)(2) to be excised. Both subsections require use of the applicable Guidelines range, subject to slightly different departure provisions, and it was the required use of the Guidelines that encountered

constitutional objections in *Booker*. Because neither of the defendants considered by the Supreme Court in *Booker* had violated provisions to which subsection 3553(b)(2) applied, the Court had no occasion to give explicit consideration to the continued viability of that subsection. Nevertheless, now faced with a defendant who has violated provisions covered by subsection 3553(b)(2), we must decide its viability, and we hold that it must be deemed excised.[5] There is no principled basis for distinguishing subsection 3553(b)(1) from 3553(b)(2) with respect to the rationale of *Booker*.

With subsection 3553(b)(2) excised, the applicable sentencing regime for Selioutsky becomes the advisory Guidelines regime specified by the Supreme Court in *Booker*. *See Crosby*, 397 F.3d at 110–14.[6]

3. We had previously identified and explicitly left open this question. *See Crosby*, 397 F.3d at 110 n.8.

4. Both subsections state: "[T]he court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless" specified conditions exist. 18 U.S.C. § 3553(b)(1), (2).

5. Because subsection 3553(b)(2) was enacted after Selioutsky's offense, if this subsection were not excised, we would have encountered the issue of whether its application to him imposed adverse consequences prohibited by the Ex Post Facto Clause.

6. We have considered the possibility that the rationale of *Booker* might warrant excision of only the portion of subsection 3553(b)(2) that makes application of the relevant Guideline range compulsory (subject to departure authority), and might leave standing the portion that limits the factors that may be considered in making downward departures. The argument for such a partial excision would be that only the compulsory nature of the Guidelines was the aspect of subsection 3553(b)(1) that encountered a Sixth Amendment objection in *Booker*, and therefore only the compulsory aspect of subsection 3553(b)(2) requires excision. For two reasons, we conclude that such

a partial excision is unwarranted. First, in *Booker* the Supreme Court could have bifurcated subsection 3553(b)(1) and excised only the portion making application of the relevant Guideline range compulsory, thereby leaving viable the portion of subsection 3553(b)(1) that authorized departures. However, the Court made no such bifurcation and excised the entirety of subsection 3553(b)(1). Second, when the Court considered the applicable standard of review of sentences under a post-*Booker* regime, it excised the entirety of subsection 3742(e). The Court's only explanation for this excision was that subsection 3742(e) "contains critical cross-references to the (now-excised) § 3553(b)(1) and consequently must be severed and excised for similar reasons." *Booker*, 125 S.Ct. at 765. The Court might have excised only the portion of subsection 3742(e) that cross-referenced subsection 3553(b)(1), leaving in place other portions, including the provision for *de novo* review of departures. However, the Court made no such bifurcation and explicitly stated that it was excising "the provision that sets forth standards of review on appeal, including *de novo* review of departures from the applicable Guidelines range." *Id.* at 764 (citation omitted).

The Court's decision to excise the entirety of subsections 3553(b)(1) and 3742(e), despite

Under that regime, which is applicable to this case now pending on direct review, *see Booker*, 125 S.Ct. at 769, the sentencing judge must consider the factors set forth in 18 U.S.C. § 3553(a), including the applicable Guidelines range and available departure authority, *see Crosby*, 397 F.3d at 111–12. The sentencing judge may then impose either a Guidelines sentence or a non-Guidelines sentence. *Id.* at 113.

## II. Applicable Standard of Review

In this case, the sentencing judge, acting prior to the decision in *Booker*, understandably applied the Guidelines and had no occasion to consider a non-Guidelines sentence. Had the Defendant appealed to challenge the application of the Guidelines in a compulsory manner, we would face the issue of whether the sentence should be remanded pursuant to *Crosby*, if the Defendant's claimed error was not preserved, or reversed for resentencing, if the Defendant's claimed error was preserved. *See United States v. Fagans*, 406 F.3d 138 (2d Cir.2005). In this case, however, the Defendant has neither appealed nor taken a cross-appeal in response to the Government's appeal. The only appeal is taken by the Government. Because even under the post-*Booker* sentencing regime, calculation of a correct Guideline sentencing range will normally be part of the process of determining an appropriate sentence, *but see Crosby*, 397 F.3d at 112 (circumstances where calculation of applicable Guideline sentencing range might not be required), it remains important in this case

to review the correctness of the District Court's determination that a Guidelines sentence for Selioutsky could include a departure for extraordinary family circumstances.

In order to determine whether a family circumstances departure was permissible, we need to consider the applicable standard of review of the District Court's decision. Prior to *Booker*, the applicable standard of review of sentencing decisions was set forth in subsection 3742(e) of Title 18. However, *Booker* excised subsection 3742(e) and replaced it with review for "reasonableness." *See* 125 S.Ct. at 765–66. Although it is arguable that an appellate court could satisfy its reviewing responsibilities under *Booker* solely by determining whether the sentence imposed is reasonable as to length, we recognized in *Crosby* that review of a sentence for "reasonableness" was not limited to consideration of the length of the sentence. 397 F.3d at 114. Apart from the unreasonableness of the length of a sentence, a sentence could be unreasonable because of a procedural error committed in the process of selecting the sentence. *See id.* An error in determining the applicable Guideline range or the availability of departure authority would be the type of procedural error that could render a sentence unreasonable under *Booker. See United States v. Rubenstein*, 403 F.3d 93, 98–99 (2d Cir.2005). Thus, we must review the correctness of the departure in this case and that task requires identification of the standard of review for that inquiry.[7]

the available argument that only portions of these subsections needed to be excised to meet Sixth Amendment objections, persuades us that, in dealing with subsection 3553(b)(2), which substantially parallels subsection 3553(b)(1), the entirety of subsection 3553(b)(2) must be deemed excised.

**7.** It is arguable that we could forgo such review on the theory that the District Court

would have imposed a 30–month sentence as a non-Guidelines sentence under the post-*Booker* regime, in which event any error in using departure authority to select the sentence that was imposed would be harmless. Although we do not preclude the possibility of applying the harmless error doctrine in such circumstances, we conclude in this case that it is more appropriate to remand to the Dis-

If subsection 3553(b)(2) were not excised, our review would be *de novo*. In the absence of a statutory *de novo* standard of review, we select the appropriate standard according to the nature of the issue presented. We review issues of law *de novo, see Rubenstein*, 403 F.3d at 99, issues of fact under the clearly erroneous standard, *see id.*, mixed questions of law and fact either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual, *see United States v. Vasquez*, 389 F.3d 65, 75 (2d Cir.2004), and exercises of discretion for abuse of discretion, *see Koon v. United States*, 518 U.S. 81, 98–99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).[8] Since the sentencing judge has discretion with respect to departures, *see* U.S.S.G. § 5K2.0 (court "may depart"), we consider whether the District Court abused (or exceeded) its discretion in using a family circumstances departure to select the Defendant's Guidelines sentence.

### III. The Family Circumstances Departure

We have reviewed departures for exceptional family circumstances in various contexts, deeming them permissible in especially compelling circumstances, *see United States v. Johnson*, 964 F.2d 124, 129 (2d Cir.1992); *United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir.1991), and impermissible in less compelling circumstances, especially where other relatives could meet the family's needs, *see United States v. Madrigal*, 331 F.3d 258, 260 (2d Cir.2003), or the defendant's absence did not cause a "particularly severe" hardship, *United States v. Smith*, 331 F.3d 292, 294 (2d Cir.2003).

In the pending case, the applicable Guideline sentencing range of 70–87 months was limited by the five-year maximum applicable to the Defendant's offense. *See* U.S.S.G. § 5G1.1(a). Judge Gleeson granted the family circumstances departure, not to enable the Defendant to assist his parents financially, but solely out of concern that the Defendant's aged parents needed his physical presence in their home at an earlier time than he would have been available after serving a five-year sentence. The Government contends that the parents' need for the Defendants' physical presence (after serving the reduced sentence of 30 months) is no more compelling than that faced by most elderly parents. Moreover, the Government points to the possible availability of the Defendant's physician-brother, now living in Pennsylvania, to be with the parents if needed.

We agree with the Government that the case for a family circumstances departure thus far made is not especially strong, but whether or not the departure would have been permissible under the pre-*Booker* regime, it is not supported by adequate findings. *See United States v. Huerta*, 371 F.3d 88, 95 (2d Cir.2004) (remanding for findings concerning family circumstances departure). There is no finding as to whether the brother would be willing to be with the parents if their needs required the presence of a son. Moreover, the presentence report indicates that the Defendant's wife was "paving the way" for him to join her and their children in Georgia. In view of this prospect, a finding needs to be made as to whether the Defendant in fact intends to be with his parents in Brooklyn in the event that his presence is

---

trict Court because we do not have a sufficient basis for believing that the same sentence would have been imposed as a non-Guidelines sentence.

**8.** The previously applicable statutory standard of giving "due deference to the district court's application of the Guidelines to the facts," *see* 18 U.S.C. § 3742(e), has been excised by *Booker*.

needed. Finally, findings are needed as to the circumstances that seem likely to require Selioutsky's presence with his parents, in the event that he is willing to be present, and as to whether the brother or other relatives will not fill the need.

### Conclusion

Accordingly, we will remand to the District Court to make the findings needed for appropriate consideration of a family circumstances departure, to reconsider such a departure in light of such findings, and then to determine, pursuant to *Booker*, whether to impose a Guidelines sentence, either with or without a departure, or to impose a non-Guidelines sentence.