**UNITED STATES of America,
Appellee,**

v.

**Larry G. ROWE, Defendant–Appellant.**

**Docket No. 04–1142–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Nov. 5, 2004.

Decided: July 5, 2005.

Ned Pillersdorf, Pillersdorf, DeRossett & Lane, Prestonburg, KY, for Defendant–Appellant.

Jonathan B. New, Assistant United States Attorney, Southern District of New York, New York, N.Y. (David N. Kelley, United States Attorney, and Peter G. Neiman, Assistant United States Attorney, on the brief), for Appellee.

Before: WALKER, Chief Judge, FEINBERG and WESLEY, Circuit Judges.

FEINBERG, Circuit Judge.

Larry G. Rowe appeals from a judgment of conviction of the United States District Court for the Southern District of New York (Brieant, J.) entered after a jury found him guilty of advertising to receive, exchange or distribute child pornography in violation of 18 U.S.C. § 2251(c) (now designated § 2251(d)).[1]

---

1. At the time of Rowe's conduct, 18 U.S.C. § 2251(c) provided in relevant part:

(1) Any person who, in a circumstance described in paragraph (2), knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering—

(A) to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct ... shall be punished as provided under subsection (d).

(2) The circumstance referred to in paragraph (1) is that-

(A) such person knows or has reason to know that such notice or advertisement will be transported in interstate or foreign commerce by any means including by computer or mailed; or

(B) such notice or advertisement is transported in interstate or foreign commerce by any means including by computer or mailed.

18 U.S.C. § 2251(c) (2000). This language is now located in 18 U.S.C. § 2251(d), in which subsection (1) has been amended to state that violators "shall be punished as provided under subsection (e) [the penalty provision originally in subsection (d)]." Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of

In April 2002, a detective on the Rockland County, New York Computer Crime Task Force entered an internet chat room in which he saw a posting that he believed to be an advertisement for child pornography. Following the posting's instructions, the detective connected to a computer eventually traced to Rowe's home in Pikeville, Kentucky. Once linked to Rowe's computer, the detective attempted to obtain a child-pornographic image without offering one in return as required by the rules that Rowe had devised. The detective was consequently disconnected. United States Secret Service agents later executed a search warrant at Rowe's home, where they found a computer hard drive containing thousands of child-pornographic images. Thereafter, Rowe was charged with and convicted by a jury of advertising to receive, exchange or distribute child pornography. We affirm Rowe's conviction but vacate his sentence and remand for further proceedings.

## I. Background

### A. The investigation

At approximately one o'clock in the morning on April 5, 2002, Shlomo Koenig, a detective on the Computer Crime Task Forces of both the Rockland County Sheriff's Department and the United States Secret Service, connected to the internet and entered a chat room titled "preteen00."[2] The detective testified at Rowe's trial that the "preteen00" chat room was "a room which I've known from prior [experience] where there is trading of child porn." The detective also testified that the name of the room "is used basically in the pedophile community." Once in the chat room, the detective came across a posting that read: "[v2.3b] Fserve Trigger: *!tun* Ratio 1:1 Offering: *Pre boys/girl pics.* Read the rules. [1 of 2 slots in use]" (emphasis in original). This text had been posted by a person with the screen name "Tunlvd," a name later determined to belong to Rowe.

According to the government's undisputed explanation, "[v2.3b]" indicated that the software program Rowe used was Panzer version 2.3b. "Fserve Trigger: *!tun*" indicated that "!tun" was the password needed to access the file server containing the images on Rowe's computer. "Ratio 1:1" indicated that users wishing to download images from Rowe's computer had to upload an equivalent number of images to his computer. "Offering: *Pre boys/girl pics*" indicated that the images available on Rowe's computer were pictures of pre-teen boys and girls. "Read the rules" indicated that a user wishing to download images had first to read the rules of use. Finally, "[1 of 2 slots in use]" indicated that two users could access Rowe's computer at the same time, and that one user was doing so when Detective Koenig viewed the posting.

When the detective typed the "trigger," he was linked to Rowe's computer. Once connected, he was presented with Rowe's rules of use, which provided:

> By entering this fserve you are agreeing that you are not a law officer or affiliated with the law in any way and do not hold this fserve nor owner there of accountable for anything you upload or download. if u do i guess i'm just screwed:/ If you do not agree to the above LEAVE NOW!
>
> (now for the rules)

2003 ("PROTECT Act"), Pub.L. No. 108–21, 117 Stat. 650 (2003).

**2.** The parties' submissions refer to the chat room as both "preteen00" and "# 0!!!!!!!!!!!!preteen00." For simplicity's sake, we refer to the chat room as "preteen00."

Rules are

up only Pre (10–) no clothes no pube hair

if your pic won't up

i prolly have it already

im still sorting so there maybe stuff i havent pulled yet

After reading these rules, Detective Koenig reviewed and copied a text list of the images available for download from Rowe's computer. That list named files such as "dadfucking12yearold.jpg," "10yo_preteen_raped.jpg" and "incest kiddy rape.jpg." When the detective attempted to download an image without also uploading one, as the rules required, he was disconnected from Rowe's computer.

After verifying that the posting in the "preteen00" chat room linked to Rowe's computer and that "Tunlvd" was Rowe, in June 2002 Secret Service agents executed a search warrant at Rowe's home. Among the items seized was a computer hard drive found to contain approximately 12,000 child-pornographic images and videos. As the agents were searching Rowe's home, he spoke with one of them and, after being informed of his right to remain silent, admitted that his screen name was "Tunlvd," that he was likely in the "preteen00" chat room at one o'clock in the morning on April 5, 2002, that he knew it was illegal to download or upload child-pornographic images and that he had downloaded approximately 6,000 such images and had uploaded an equivalent number from his computer to other users.

## B. The proceedings below

The following day, June 20, 2002, the government filed a one-count criminal complaint in the Southern District of New York charging Rowe with violating 18 U.S.C. § 2251(c). In February 2003, a federal grand jury sitting in the Southern District of New York returned a single-count indictment charging Rowe with violating § 2251(c).

Prior to trial, Rowe moved for a transfer of venue—on both constitutional and convenience grounds—from the Southern District of New York to the Eastern District of Kentucky, in which Rowe resided. In his brief on the motion, Rowe anticipated the government arguing that venue would be proper in any district from which one might read Rowe's online posting. Rowe argued that such a rule would "give[ ] the prosecution tremendous and improper freedom within which to determine, as a matter of its own discretion where to bring a case." At the hearing on the motion, Rowe emphasized that under such a theory, venue for prosecuting criminal internet advertisers would be proper "any place in the world."

In deciding Rowe's motion, the district judge first noted that Article III's venue provision "essentially requires a determination of where the crime occurred." The judge next observed that for offenses committed in more than one judicial district, "venue is proper, both under the Constitution and under the Federal Rules of Criminal Procedure, in any district in which such offense was begun, continued or completed. That's a quotation from Title 18 of the United States Code Section 3237, Subparagraph A." [3] The judge then noted this

---

**3.** 18 U.S.C. § 3237(a) provides:

Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or

Circuit's "substantial contacts" test for determining proper venue, and analyzed the facts of Rowe's case under the test's factors. Responding to Rowe's contention that locating venue in the Southern District "gives the prosecution improper discretion in determining where to prosecute a crime[,]" the judge "reject[ed] that argument."

Specifically, the judge concluded that "this crime occurred in any district in which the advertisement appeared; that is to say, anywhere where the Internet chat room was accessible and was actually accessed by anybody." After thus finding venue in the Southern District constitutionally proper, the judge also denied Rowe's motion to transfer venue for the sake of convenience or in the interests of justice.

Rowe was tried before a jury in November 2003. When the government rested its case, Rowe moved for judgment as a matter of law on the argument that the "preteen00" chat-room posting identified in the indictment "does not make a reference to child pornography.... [T]he charged conduct is only whether or not that specific [posting] amounts to a specific solicitation for exchange of child pornography, and the defendant asserts that it does not." The district judge denied the motion, finding that the "government's evidence can't be viewed in isolation .... [The posting] invites the reader to amplify the statement ... by reference to [Rowe's] rules, which ... are adequate, in the Court's views, to indicate that there is an intention [to] offer or receive only pre-age 10 with no clothes and no pubic hair." The district judge

concluded that "these exhibits are adequate to charge validly and prove the offense of the indictment ...." The district judge also refused to direct acquittal on the argument that the posting did not travel through interstate commerce.

The defense put its case on and Rowe eventually took the stand, claiming that his posting in the "preteen00" chat room was not an advertisement to exchange child pornography, but a link intended for someone with the screen name "BabyK" to use to gain access to Rowe's computer. According to Rowe, "BabyK" was a woman who claimed to be the "Katie" from a website called "Katie's–World."[4] Rowe testified that he "was totally infatuated and head-over-heels in love with ['BabyK'] within—within three days" of meeting her in the "preteen00" chat room. Rowe further testified that "BabyK" told him "that she had been raped by four men," and that "she sent [Rowe] the pictures paralleling what had happened to her" so that Rowe could understand her. Rowe implied that the child-pornographic images found on his computer had been uploaded by "BabyK," to whom he had given "complete, total access to [his] machine." The posting placed in the "preteen00" chat room was merely, Rowe claimed, a convenient means of assuring "BabyK" access to Rowe's computer: "the message that—[the Secret Service agents] referred to it as an advertisement. It was a message between me and ['BabyK']. And I never in any way ever considered it an advertisement." Rowe did not explain why, if this was the case, his posting was "Offering: *Pre boys/*

---

person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

**4.** A married couple, Lauren and James Dougherty, run the "Katie's–World" website. Ms. Dougherty, when called to the stand, testified that she did not know Rowe.

*girl pics*" (emphasis in original), why a reader of the posting should "Read the Rules" or why there was "1 of 2 slots in use."

The jury found Rowe guilty. At sentencing, the district judge and Rowe's attorney both expressed the belief that Rowe's crime carried a mandatory minimum of 10 years in prison. The district judge voiced his displeasure with this, stating that "statutory minimums generally create a problem" and that "this may be a classic case where the issue of proportionality is presented." The judge sentenced Rowe to 10 years in prison followed by three years of supervised release. The judge also ordered Rowe to undergo sex-offender treatment and forbade him from having any deliberate contact with any child under 17 years of age without the permission of a probation officer.

This timely appeal followed.

## II. Discussion

On appeal, Rowe argues principally that his posting was not a "notice or advertisement" within the meaning of § 2251(c), that venue was improper and that his sentence of 10 years in prison violates the Eighth Amendment. We consider these arguments in turn.

### A. Was Rowe's posting a "notice or advertisement" under § 2251(c)?

■ Rowe argues that his posting "does not meet the definition of an advertisement prohibited [by 18] U.S.C. § 2251(c)," and that his conviction must therefore be reversed. The government apparently asserts that this is an argument regarding the sufficiency of the evidence, and thus urges a deferential standard of review. We believe Rowe's argument is more accurately characterized as a purely legal question of statutory interpretation, and we therefore review the district judge's ruling de novo. *See, e.g., Field v. United States*, 381 F.3d 109, 111 (2d Cir.2004).

Rowe placed his posting—"[v2.3b] Fserve Trigger: *!tun* Ratio 1:1 Offering: *Pre boys/girl pics*. Read the Rules. [1 of 2 slots in use]" (emphasis in original)—in the "preteen00" chat room. The government maintains that "this chatroom was devoted to the exchange of child pornography images," and that typical postings included "anybody with baby sex pics for trade?" and "young teen amateur movie ... cum, gag, teen gangbang, non-nude, and more ...." Rowe does not dispute the government's characterization, and effectively concedes it by arguing that "the context of the chat room ... [and] the presence of other explicit advertisements for child pornography in the chat room [do not] make the [posting] an advertisement prohibited by [18] U.S.C. § 2251(c)." Rowe contends, as he did unsuccessfully below, that "nothing in [his posting] ... indicates that pornography is involved of any kind ...." His posting in the chat room, Rowe asserts, "is only an advertisement offering pictures of 'preboys/girl.'"

Contrary to what Rowe would have us hold, "only" offering pictures of children in a "preteen00" chat room peppered with queries such as "anybody with baby sex pics for trade?" is sufficient to constitute a "notice or advertisement" within the meaning of § 2251(c). As the government aptly characterizes it, "Rowe's decision to place into this forum his notice that he was 'Offering: Preboys/girl pics' could have had only a single purpose—to advise others that he had child pornography available for trade."

■ Rowe insists that his posting is beyond the scope of § 2251(c) because it "does not by its very terms indicate it is seeking or offering materials of a pornographic nature." Rowe cites no authority to support this proposition, which is belied

by § 2251(c)'s plain language, case law and common sense. Section 2251(c) makes it a crime to "knowingly make[ ], print[ ], or publish[ ] ... any notice or advertisement seeking or offering ... any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct." 18 U.S.C. § 2251(c)(1)(A). As a recent district court decision in this Circuit correctly observed, "there is no requirement that an advertisement must specifically state that it offers or seeks a visual depiction to violate § 2251(c)(1)(A) .... '[N]o particular magic words or phrases need to be included.'" *United States v. Pabon–Cruz,* 255 F.Supp.2d 200, 218 (S.D.N.Y. 2003) (quoting jury charge), aff'd in relevant part, 391 F.3d 86 (2d Cir.2004).

The question here is thus whether Rowe knowingly offered or sought images depicting minors engaged in sexually explicit conduct. There is no doubt that he did. Section 2251(c) is not so narrow that it captures only those who state, "I have child-pornographic images for trade." We agree with the government that if that were the case, then "all a distributor of child pornograph[y] need do to avoid § 2251(c) is use a modicum of sub[t]lety in describing the images sought or offered." We further agree that "Congress did not intend its bar on advertising for child pornography to be so easily evaded." We therefore affirm the district judge's ruling that Rowe's chat-room posting was a "notice or advertisement" within the meaning of § 2251(c).

B. Was venue in the Southern District proper?

■ Rowe argues that venue in the Southern District of New York was improper and thus that the district judge erred in denying his motion to transfer the case to the Eastern District of Kentucky,

where Rowe resided and used his computer to post the advertisement at issue. The government maintains that both venue and the district judge's ruling were proper. We review de novo. *See, e.g., United States v. Geibel,* 369 F.3d 682, 695 (2d Cir.2004).

The question of what a proper venue is for a § 2251(c) prosecution is one of first impression in this Circuit. It appears, in fact, that no other federal court has yet ruled on this matter.

We begin with the observation that "[v]enue in federal criminal cases is controlled by a complicated interplay of constitutional provisions, statutes, and rules." 2 Charles Alan Wright, Federal Practice and Procedure § 301 (3d ed.2000). The Constitution mentions venue in two places. First, Article III provides that the "Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed ...." U.S. Const. art. III, § 2, cl. 3. Second, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...." U.S. Const. amend. VI. These provisions have been read to afford defendants a right to be tried in the district in which the charged crime was committed. 2 Fed. Prac. & Proc. § 301. In particular, the case law suggests that these provisions were designed to protect defendants from the bias and inconvenience that may attend trial in a forum other than one in which the crime was committed. *See, e.g., United States v. Johnson,* 323 U.S. 273, 275, 278, 65 S.Ct. 249, 89 L.Ed. 236 (1944) (noting the unfairness of requiring trial before "a tribunal favorable to the prosecution" as well as the "difficulties, financial and otherwise," of being tried in "places remote from home"); *United States v.*

*Cores,* 356 U.S. 405, 407, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958) ("The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place."). In addition to these constitutional provisions, there are various substantive statutes that lay venue for particular crimes, as well as Federal Rule of Criminal Procedure 18, which provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."

In this Circuit, we pointed out some time ago that

> there is no single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding . . . .

*United States v. Reed,* 773 F.2d 477, 481 (2d Cir.1985). In *United States v. Rodriguez–Moreno,* 526 U.S. 275, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999), the Supreme Court instructed that a district court determining the suitability of a particular venue "must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *Id.* at 279, 119 S.Ct. 1239.

As for the "conduct constituting the offense," § 2251(c) makes it a crime to "knowingly make[ ], print[ ], or publish[ ], or cause[ ] to be made, printed, or published, any notice or advertisement seeking or offering [child pornography]." 18 U.S.C. § 2251(c)(1)(A). The statute requires that violators knew or had reason to know that their notice or advertisement would be "transported in interstate or foreign commerce by any means including by computer or mailed," id. § 2251(c)(2)(A), or simply that the notice or advertisement was in fact so transported. Id. § 2251(c)(2)(B). Section 2251(c)'s "conduct constituting the offense" is thus the publication of an offer, expected to be or actually communicated across state lines, to provide, receive or exchange child pornography. We hold in Part II.A., supra, that Rowe's posting in the "preteen00" chat room was an offer to exchange child pornography, and there is no dispute that the offer was transported in interstate commerce by computer.

■ We must therefore "discern the location of the commission of the criminal acts." Rodriguez–Moreno, 526 U.S. at 279, 119 S.Ct. 1239. " '[W]here a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.' " *Id.* at 281, 119 S.Ct. 1239 (quoting *United States v. Lombardo,* 241 U.S. 73, 77, 36 S.Ct. 508, 60 L.Ed. 897 (1916)). See also Reed, 773 F.2d at 480 ("[W]here the acts constituting the crime and the nature of the crime charged implicate more than one location, the [C]onstitution does not command a single exclusive venue."). The government contends—and Rowe does not disagree—that the "offense created by § 2251(c) is clearly a continuing offense." The government maintains that what it calls a "continuing offense" is defined in 18 U.S.C. § 3237(a), which states in part that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

In *Johnson,* the Supreme Court stated that venue is proper in any district "through which force propelled by an offender operates." 323 U.S. at 275, 65 S.Ct.

249. A number of decisions have subsequently cited § 3237(a) to find venue proper in any such district. See, e.g., *Rodriguez–Moreno*, 526 U.S. at 282, 119 S.Ct. 1239 (venue of prosecution for carrying a firearm in relation to any crime of violence was proper in district where kidnapper took victim, even though kidnapper's use of firearm occurred outside that district); *United States v. Chen*, 378 F.3d 151, 160 (2d Cir.2004) (venue of prosecution for extortionate loan collection was proper in district where loan initiated, even though extortionate collection occurred outside that district); *United States v. Sutton*, 13 F.3d 595, 599 (2d Cir.1994) (per curiam) (venue of prosecution for mailing fake driver's licenses was proper in district to which licenses were sent, even though defendant mailed licenses from outside that district).

Although none of those decisions involved crimes committed over the internet, at least one Circuit has applied 18 U.S.C. § 3237(a) to internet crime. In *United States v. Thomas*, 74 F.3d 701 (6th Cir. 1996), the Sixth Circuit affirmed a couple's conviction for operating an electronic bulletin board from which paying subscribers could download obscene images. The couple lived in and ran the bulletin board from California, but were prosecuted in the Western District of Tennessee after a federal postal inspector there, acting on the complaint of a private individual, subscribed to the bulletin board and obtained the images found to be obscene. To gain access to the bulletin board, the inspector—and every other subscriber—had to submit a signed application form, along with a $55 fee, indicating the applicant's age, address and telephone number. After the inspector pseudonymously submitted the form and fee, one of the defendants called him "at his undercover telephone number in Memphis, Tennessee, acknowledged receipt of his application, and authorized him to log-on with his personal password." 74 F.3d at 705. The Sixth Circuit reasoned that, because "'there is no constitutional impediment to the government's power to prosecute pornography dealers in any district into which the material is sent,'" *id.* at 709 (quoting *United States v. Bagnell*, 679 F.2d 826, 830 (11th Cir.1982)), venue in Tennessee was proper pursuant to § 3237(a) because "Defendant Robert Thomas knew of, approved, and had conversed with [a bulletin board] member in that judicial district [the Western District of Tennessee] who had his [the defendant's] permission to access and copy [the images] that ultimately ended up there." *Id.* at 710.

Rowe did not intentionally transact business with a New Yorker in the same way that the Thomases authorized a paying client in Tennessee to access their pornography, but we believe that Rowe's conduct nevertheless amounted to a continuing offense committed in New York. As the district judge reasoned, Rowe

> must have known or contemplated that the advertisement would be transmitted by computer to anyone the whole world over who logged onto the site and entered the chat room .... It is clear that the chat room could be entered in this district and in fact was entered in this district .... It is clear that both the statutes and the case law and the Constitution permit crimes of this sort to be prosecuted in any jurisdiction where any part of the crime occurred ....

We agree. Section 3237(a)'s language is broad, and Rowe's act of publishing an internet advertisement to trade child pornography can readily be described as an "offense involving ... transportation in interstate ... commerce." 18 U.S.C. § 3237(a). Moreover, the district judge found venue proper in light of the factors listed in this Circuit's "substantial contacts" test. Finally, the two chief ills that

the constitutional venue provisions are meant to guard against—bias and inconvenience—are not substantially present in this case. Rowe offered no evidence that New York juries disfavor the conduct at issue any more than Kentucky juries, nor did he demonstrate that trial in New York would—or did—impose an undue burden on him.

We therefore affirm the district judge's ruling that venue in the Southern District of New York was proper in this case.

## C. Sentence

 Rowe argues that his 10–year prison sentence is disproportionate to his crime and thus violates the Eighth Amendment. This argument is moot in light of a case decided in this Court after Rowe's appeal was briefed and argued. In *United States v. Pabon–Cruz*, 391 F.3d 86 (2d Cir.2004), we vacated the defendant's sentence and remanded for resentencing after holding that a violation of § 2251(c) did not require imposition of a 10–year mandatory minimum sentence. As worded when Mr. Pabon–Cruz was prosecuted, § 2251(c)'s penalty provision stated that violators "shall be fined under this title *or* imprisoned not less than 10 years nor more than 20 years, *and both*." 18 U.S.C. § 2251(d) (emphasis supplied).[5] This same language applied when Rowe committed his crime. As we observed, "the 'and both' language ... makes no sense as a matter of grammar, usage, or law ...." 391 F.3d at 105. Accordingly, we held that

the District Court had the discretion to sentence defendant to either a fine or a term of imprisonment of not less than ten years or both. Because this was not clear to the parties or to the District Court at the time of sentencing, we are required to vacate the sentence and re-

mand the cause to the District Court for resentencing consistent with our opinion here and with such Sentencing Guidelines as may be applicable in the circumstances presented.

*Id.*

It is clear from the record here that neither the parties nor the district judge were aware that the judge was not required to sentence Rowe to a term of imprisonment of at least 10 years. Rowe's Sentencing Guidelines range was 97–121 months, but the district judge stated at sentencing that "[t]he Court's understanding is that there's a ten-year statutory minimum which trumps the low end of the guidelines" such that Rowe's effective range was 120–121 months. Defense counsel agreed: "I understand that there's a mandatory minimum here that supersedes." It is also clear from the record that the district judge was troubled by what he thought was § 2251(c)'s mandatory minimum:

I think that statutory minimums generally create a problem. I think this may be a classic case where the issue of proportionality is presented. I do not condone in any way anything Mr. Rowe did, but I really think that the perpetrator who distributes 15 kilograms of cocaine [and who is subject to a sentence as short as 121 months under the Guidelines] is worse .... The Court believes there's a serious issue of proportionality here. [But t]he Court does not believe that it is in a position of defying the act of Congress ....

Since Rowe was not subject—despite the parties' and district judge's belief to the contrary—to a mandatory minimum of 10 years in prison, we must vacate his

---

5. The penalty provision has since been redesignated and reworded to provide that violators "shall be fined under this title *and* im-

prisoned not less than 15 years nor more than 30 years ...." 18 U.S.C. § 2251(e) (emphasis supplied).

sentence. Pursuant to § 2251(c)'s penalty provision, the district judge on remand will have the "discretion to sentence defendant to either a fine or a term of imprisonment not less than ten years or both." Pabon–Cruz, 391 F.3d at 105. And as we did in *Pabon–Cruz*, we "remand the cause to the District Court for resentencing consistent with our opinion here and with such Sentencing Guidelines as may be applicable in the circumstances presented."[6] *Id.* In light of the Supreme Court's decision in *United States v. Booker*, — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and our decision in *United States v. Selioutsky*, 409 F.3d 114 (2d Cir.2005) (holding that subsection 3553(b)(2) of U.S.C. Title 18 must be excised pursuant to *Booker*), the district court must resentence Rowe under a regime of advisory Sentencing Guidelines. "[T]he sentencing judge must consider the factors set forth in 18 U.S.C. § 3553(a), including the applicable Guidelines range and available departure authority ... [and] may then impose either a Guidelines sentence or a non-Guidelines sentence." 409 F.3d at 117.

### III. Conclusion

We affirm the district judge's rulings that Rowe posted an "advertisement or notice" within the meaning of 18 U.S.C. § 2251(c) and that venue was proper. We therefore affirm Rowe's conviction, but vacate his sentence in light of *Pabon–Cruz* and remand for resentencing.

---

6. In his appellate brief, Rowe reiterated certain objections he made to the district judge regarding how his sentence range was calculated pursuant to the Guidelines. We need not rule on these objections, as Rowe will have the opportunity to present them again to the district judge upon remand.